IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-96-FL

| | |
|---|---|
| JENNIFER LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Jennifer Lee ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be granted, Defendant's Motion for Judgment on the Pleadings [DE-27] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on April 17, 2009, alleging disability beginning August 20, 2008. (Tr. 71-72,140, 144.) The application

was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 71-74, 91-93.) On November 12, 2010, a hearing was held before Administrative Law Judge Ralph Dodds ("ALJ"), who issued an unfavorable ruling on January 21, 2011. (Tr. 48, 41.) On May 20, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. §§ 404.1520a(e)(3), 416.920a(e)(3).

## III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not

engaged in substantial gainful employment since August 20, 2008.  (Tr. 35.)  Next, the ALJ determined Plaintiff had the following severe impairments: "depression and anxiety disorder." (*Id.*)  The ALJ additionally found Plaintiff to have the following non-severe impairments: hypertension and diabetes mellitus.  (Tr. 36.)  However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform work at all exertional levels with the following restrictions:

> [Claimant] is limited to work performing simple, routine tasks with short, simple instructions, can only occasionally interact with the public and coworkers, and can no more than frequently interact with her supervisors.

(Tr. 37.)  In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible.  (*Id.*)  At step four, the ALJ concluded Plaintiff was not capable of performing the requirements of her past relevant work.  (Tr. 39-40.)  Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies.  (Tr. 40-41.)

### IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on three grounds. Plaintiff first contends that the ALJ erred by failing to include in the RFC finding and the hypothetical presented to the vocational expert ("VE") that Plaintiff was limited to a non-production job.  Second, Plaintiff asserts that the ALJ erred by failing to tell the VE anything

concerning the frequency and duration of Plaintiff's lapses of concentration and pace. Third, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.

### A. RFC & Hypothetical

Plaintiff contends that the ALJ erred by failing to limit Plaintiff to non-production paced work in the RFC and hypothetical. Plaintiff points out that both non-examining state agency consultants prepared Mental RFC Assessments indicating Plaintiff was limited to work in non-production jobs. (Tr. 462, 486.) The ALJ gave significant weight to the examining and non-examining state agency consultants, as well as Plaintiff's treating physicians and therapist. (Tr. 39.) However, the ALJ did not expressly limit Plaintiff to non-production work in the RFC or hypothetical and did not explain why that particular limitation was not included.

The RFC is an administrative assessment of "an individual's ability to do sustained work related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). The RFC is based upon all relevant evidence and may include a claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a vocational expert's opinion to be relevant or helpful, "it must

be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* The ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209, *5 (4th Cir. 1999) (per curium) (unpublished). If the AJ does not believe that a claimant suffers from one or more claimed impairments, and the substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Bryant v. Astrue*, No. 7:06-CV-151-FL, 2008 WL 2037421, at *11 (E.D.N.C. May 12, 2008) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)).

Plaintiff's medical record contains only two functional assessments, both of which were provided by non-examining state agency consultants. The ALJ stated he gave both opinions significant weight; however, the ALJ did not provide any explanation why he did not include in the RFC or the hypothetical the state agency consultants' recommendation that plaintiff be limited to non-production paced work. Throughout his decision, the ALJ goes into extensive detail about the available medical records and the assessments provided therein. He recites the state agency consultants' findings that "claimant retains the capacity to perform simple routine, repetitive tasks at a non-production pace in a low social demand environment with limited public contact" and assigns their opinions significant weight. Yet, he provides no discussion about Plaintiff's ability or inability to perform production pace work.

Because there is no explanation as to why the ALJ did not accept the limitation to non-production paced work in medical opinions to which he assigned significant weight, the undersigned is unable to say that the ALJ's findings are supported by substantial evidence and were reached through the application of the correct legal standards. This case should be remanded to the Commissioner for further explanation of the ALJ's findings with regard to

6

Plaintiff's ability to perform production paced work and/or to obtain additional VE testimony on the issue of the availability of non-production oriented jobs Plaintiff can perform.

B.   **Concentration and Pace**

Plaintiff next contends that the ALJ erred by "failing to tell the VE anything concerning the frequency and duration of [Plaintiff's] lapses of concentration and pace." (Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 7.)   The ALJ presented the following hypothetical to the VE:

> [A]ssume a hypothetical person the same age, education, and work experience as the claimant, a person without any exertional impairments, however, would require a job with simple routine tasks, short simple instructions, with few work place changes.  And only occasional interaction with public and coworkers, nor more than frequent with supervisors.   Would there be jobs available for this person?

(Tr. 68.)   Additionally, the ALJ found in his decision that Plaintiff had moderate limitations of concentration, persistence, and pace.   (Tr. 36.)

Plaintiff argues that limiting Plaintiff to simple, routine tasks does not address the issue of frequency and duration of Plaintiff's lapses in concentration, persistence, and pace.   However, an ALJ may address limitations of concentration, persistence, and pace by limiting a plaintiff to simple, routine and repetitive tasks.   *See Parker v. Astrue*, 792 F. Supp. 2d 886, 896 (E.D.N.C. 2001) (finding moderate concentration difficulties and mild restrictions in activities of daily living and social functioning consistent with ALJ's determination that claimant could perform simple, routine, and repetitive tasks) (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("The ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [claimant's] deficiencies in concentration, persistence, and pace."); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (holding that hypothetical including the "ability to do only simple routine repetitive work, which does not require close attention to detail" sufficiently describes deficiencies of concentration, persistence or pace)).   Thus, the ALJ

adequately addressed Plaintiffs moderate limitations in concentration, persistence and pace by limiting her to simple routine tasks with simple instructions.

### C. Plaintiff's Credibility

Plaintiff further argues that the ALJ erred in assessing her credibility. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

In the instant case, the ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff was not fully credible. (Tr. 56.) The ALJ explained his credibility determination, stating:

> The claimant alleges her mental impairments have disabled her from work since August 20, 2008. But the claimant and her mother also acknowledge that she lost her job because she misused her employee discount. According to the claimant, "I got fired due to my condition and using my employee discount for another person when it was only to be used by me and for me." The claimant did not explain why she believed her condition was related to her abusing her employee discount, and her willingness to abuse this benefit does nothing to bolster her credibility. The claimant's therapist, Wanda S. Bryant, MSW, LCSW, said the claimant was looking for work in December of 2008, four months after she alleges her impairment deprived her of the capacity to work. In a Disability Report – Adult – Form SSA-3368 from April of 2009, the claimant said she received services from Vocational Rehabilitation. She said they were trying to help her find a job, and they might send her to Tri-County Industries to assess her skills. The claimant has not provided evidence from Vocational Rehabilitation or Tri-County Industries to support her allegation that she is incapable of work, and her statement about receiving their employment services suggests a capacity for work. Moreover, the claimant currently cares for her invalid mother, which evinces a capacity beyond what she alleges as well as a potential reason for not returning to gainful activity.

(Tr. 37-38.) Further, the ALJ extensively analyzed the medical record within his decision. Thus, the ALJ properly evaluated Plaintiff's credibility and, based on the evidence of record, determined that Plaintiff's statements concerning her inability to work were not fully credible.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-25] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-27] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written

9

objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 14th day of August 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge